IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RUTH M.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                6:22-CV-0143 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.                    PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                FERGUS J. KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which she has applied.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in February of 1967, and is currently fifty-five years of age.  She was forty-eight years old on April 1, 2015, the date she alleges her disability began, and fifty-two years old when she filed her application in January of 2020.  Plaintiff measures five feet and one inch in height, and weighed approximately one hundred and fifty pounds during the relevant period.  Plaintiff currently lives in a house by herself in Marcy, New York.

Plaintiff reports having graduated from high school.  She worked most recently as a confidential secretary for a New York state court judge, although she has also performed duties as a legal assistant.

Plaintiff alleges that she suffers from a variety of physical

impairments including systemic lupus, fibromyalgia, rheumatoid arthritis, osteoarthritis, irritable bowel syndrome, a brain bleed, migraines, Barrett's esophagus, acid reflux, Sjogren's syndrome, Raynaud's syndrome, nodules on her thyroid, endometriosis, and a prior lump removal from her breast. As is relevant to her applications, plaintiff has treated for her impairments with sources at Faxton-St. Luke's Hospital and associated clinics, the Slocum Dickson Medical Group, and the Bassett Medical Center.

Plaintiff alleges that she left her most recent job working for a judge because she was having difficulty sitting for long periods of time and no longer felt she could handle the mental demands of that position due to chronic fatigue and tiredness. She reports that she has pain throughout her entire body and is so sore that it is often difficult to get out of bed or move. Plaintiff testified that she also experiences migraines and her hands are swollen and painful, making it difficult to type and hold or grasp objects. She experiences alternating diarrhea and constipation that cause her to need to use the bathroom four or five times per day for lengthy periods of time. She additionally reports difficulty moving her neck.

In terms of activities, plaintiff testified that she sometimes walks her dog although her nephew helps with that. She also mows her lawn in short

intervals using a riding lawn mower, takes care of a few chickens,[1] checks on her mother who lives in another house on the same property, does housework and maintenance although it is difficult, and shops. She reports difficulty sitting for long periods of time due to pain.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on January 30, 2020. After a hearing, administrative law judge ("ALJ") Jeremy G. Eldred issued a decision on October 21, 2021, finding that plaintiff was not disabled. That opinion became a final determination of the agency on December 10, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

    B.     The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period. The ALJ next found at step two that plaintiff suffers from severe impairments that

---

[1]     It was noted that she also had goats during the relevant period, but had to dispose of them and some of her chickens by the time of the hearing due to the fact that caring for them became too much work.

impose more than minimal limitations on her ability to perform basic work functions, including fibromyalgia, osteoarthritis, scoliosis, degenerative changes of the lumbar spine, gastroesophageal reflux disorder ("GERD"), and thyroid nodules.  As part of his step two finding, ALJ Eldred also found that plaintiff's headache disorder and obesity are not severe impairments, and that there are no diagnoses or evidence to corroborate her reports of irritable bowel syndrome, lupus or rheumatoid arthritis.

At step three, ALJ Eldred examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.15, 1.16, and 1.18.

ALJ Eldred next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, as defined by the controlling regulations, with the following exceptions:

> she could climb, stoop, kneel, crouch, or crawl no more than occasionally, and needed to avoid exposure to concentrated dust, odors, fumes, or gases.

ALJ Eldred went on at step four and concluded that plaintiff remains

able to perform her past relevant work, which was defined by the vocational

expert as that of paralegal, Dictionary of Occupational Titles ("DOT")

119.267-026, as that position is generally performed in the national

economy.  Based upon these findings, ALJ Eldred determined that plaintiff

was not disabled at the relevant times.

### C.   This Action

Plaintiff commenced this action on February 15, 2022.[2]  In support of

her challenge to the ALJ's determination, plaintiff argues that the ALJ (1)

erred when assessing the RFC and the opinion evidence by failing explain

why he excluded certain limitations that were opined by the consultative

examiner, and by failing to include any limitations in the RFC to correspond

with his finding that plaintiff's GERD and thyroid nodules are severe

impairments; and (2) failed to support his conclusion at step four with

substantial evidence when finding that plaintiff can perform her past

relevant work as a paralegal, and notably failed to question the vocational

expert as to whether she remains able to perform that job.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

November 10, 2022, at which time decision was reserved.

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d

582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>ALJ's Assessment of the RFC</u>

Plaintiff first argues that the ALJ erred in failing to explain why he

chose not to account for certain limitations included in the opinion from consultative examiner Dr. Rita Figueroa, and for failing to provide any limitations related to the severe impairments of GERD and thyroid nodules.

On March 27, 2020, after conducting an examination, consultative examiner Dr. Figueroa opined that plaintiff (1) should avoid high noise level areas, (2) should have bathroom periods as needed, (3) will have difficulty maintaining activities of moderate and severe exertion, and (4) will have moderate limitations in kneeling, squatting, crawling, reaching, pushing and pulling, severe limitations to repetitive bending, lifting and carrying, and moderate-to-severe limitation in turning her neck.  Administrative Transcript ("AT") at 607.[3]

The ALJ found Dr. Figueroa's opinion to be "less persuasive" because, although she examined plaintiff, "many of the functional limitations she described are not supported by the existence of underlying medically determinable 'severe' impairments that would cause such limitations."  AT 17.  The ALJ noted, "for example," that there is no documented impairment related to a need to avoid noise or to have excessive bathroom periods, and that Dr. Figueroa's opinion is inconsistent

---

[3]    The administrative transcript is found at Dkt. No. 8 and will be referred to throughout this decision as "AT__."

with the evidence the ALJ had already discussed regarding plaintiff's daily activities and positive response to treatment.  AT 17.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding the evaluation of opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions.  20 C.F.R. §

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

Given the ALJ's explanation that he found Dr. Figueroa's opinion to be unsupported by both the medical evidence related to plaintiff's impairments and her reported activities and response to treatment, I find no merit in plaintiff's argument that the ALJ failed to explain why he chose not to incorporate limitations such as a need to avoid moderate or severe exertion.  Although the ALJ specifically discussed only the limitations related to noise and bathroom usage in his explanation regarding his persuasiveness finding, the ALJ noted that those were merely examples, and there is nothing to suggest he ignored the other limitations in that opinion when analyzing persuasiveness.  *Brault*, 683 F.3d at 448

---

medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

(indicating that the ALJ need not discuss ever specific piece of evidence to show that it was considered). Moreover, although plaintiff seems to assume that difficulty maintaining activities of moderate or severe exertion would translate into an inability to perform light work, such argument is not a forgone conclusion. The ALJ here limited plaintiff to light work with occasional postural activities and avoidance of environmental hazards, which accommodates a lower level of exertion than that which would be required for the performance of medium or heavy work. However, whether the ALJ's RFC can be said to be consistent with that limitation is immaterial, because the ALJ made clear that the record does not support the level of restriction opined by Dr. Figueroa in most respects.

In his decision, the ALJ discussed that, despite Dr. Figueroa's fairly limiting opinion, her examination did not reveal significant abnormalities, other than fibromyalgia tender points, fifty-percent squat ability, and somewhat decreased range of motion in her neck, lumbar spine, shoulders, right wrist, hips, and knees. AT 605-06. I also note that the ALJ found Dr. Figueroa's opinion to be less persuasive specifically because it did not appear to stem from documented medically determinable severe impairments. In her report, Dr. Figueroa discussed plaintiff's allegations that she has systemic lupus erythematosus, rheumatoid arthritis, Sjogren's

syndrome, irritable bowel syndrome, and migraines, all of which the ALJ found were either non-severe or not substantiated by the medical record for the relevant period.  AT 603-04.  The only diagnoses that Dr. Figueroa relied on when rendering her opinion that the ALJ found were substantiated by the record and severe are her fibromyalgia and hand osteoarthritis.

The medical evidence in the record as a whole also supports the ALJ's finding that Dr. Figueroa's opinion is generally not persuasive. Examinations of the plaintiff generally revealed some instances of abdominal tenderness or pain and mild limitation in range-of-motion with tenderness of her lumbar spine.  *See* AT 343, 349-50, 355-56, 362, 614, 797.  It was not until approximately April of 2020 that plaintiff reported an increase in joint pain over the previous several months, at which point she was noted to have arthralgias and joint swelling along with abdominal tenderness, and she was restarted on Plaquenil.  AT 624-25.  In February of 2021, plaintiff presented to a rheumatologist for the first time in ten years, reporting widespread joint pain and stiffness, at which time it was noted that testing related to inflammatory or immune conditions were negative.  AT 856.  She was observed to have limited range of motion in her cervical spine, shoulders, hips, and knees due to pain, widespread tenderness consistent with fibromyalgia, and mild osteoarthritic changes in

her hands and feet.  AT 859.  The rheumatologist indicated that he was not

finding evidence to confirm her reported previous diagnoses of lupus or

mixed connective tissue disease based on the results of testing and the

examination, recommended potentially stopping Plaquenil because she did

not appear to have a rheumatologic condition, and indicated there was no

need for a rheumatology follow-up.  AT 859.  Also in February of 2021,

plaintiff reported ongoing back pain and difficulty sleeping, and her

physician referred her to try acupuncture with no observations of

abnormalities on examination.  AT 869-70.  The relevant treatment notes,

which are sporadic and generally devoid of even reports of debilitating

symptoms, support the ALJ's finding that Dr. Figueroa's opinion is

inconsistent with the evidence as a whole regarding plaintiff's impairments

and their functional effects.

The ALJ also discussed that the opinion is inconsistent with plaintiff's

own reported daily activities.  Dr. Figueroa noted that plaintiff reported

cooking four times per week, cleaning and laundering once per week,

shopping with help, and watching television.  AT 604.  Treatment notes

from October of 2016, April of 2017, and August of 2017 note that plaintiff

was working on her farm and attempting to start a business, and that

although her GERD and back issues were bothersome, she pushed

through it to do the required farm work.  AT 347, 353, 359.  Notes from as late as March 2019 continue to indicate that plaintiff was running a farm as her occupation.  AT 611.  In her function report from March of 2020, she reported that she takes care of her mother's needs including shopping for her, picking up her prescriptions, assisting her with banking, walking and feeding her dogs, preparing her meals, doing her laundry, cleaning her house, and taking her to appointments, although she had help doing these things from her brother.  AT 263.  As to her own activities, plaintiff reported that she takes care of her dogs, a cat, chickens, and goats with help from her nephew, prepares food daily, does laundry, cleaning and mowing with some help, shops, and sometimes gardens.  AT 263-68.  Although plaintiff reported reduced capacity by the hearing in October of 2021, I note that she nonetheless still reported engaging in caring for chickens, mowing, doing housework and maintenance, caring for her dog, and assisting her mother.[6]  AT 35-43.  Although plaintiff has certainly experienced some limitations in her activities of daily living, there was nothing unreasonable in the ALJ's conclusion that her reported activities were inconsistent with the more significant level of restriction reflected in Dr. Figueroa's opinion.

---

[6]    Plaintiff was insured for benefits under Title II only until December 31, 2020, and thus her testimony from the hearing is from after the relevant period at issue in this case.

As to plaintiff's corollary argument that the ALJ failed to account for any limitations related to the severe impairments of GERD and thyroid nodules, she has not explained what limitations related to those impairments are supported by the record in excess of the limitations already accounted for by the RFC.  The record regarding thyroid nodules broadly reveals no functional effects from that impairment, and although GERD caused abdominal pain and discomfort, there is no indication that greater or more specific restrictions were warranted as a result of that impairment.  *See Brenden R. v. Comm'r of Soc. Sec.*, 20-CV-0821, 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) (Hurd, J.) (noting that "[t]he burden is on plaintiff to show that the record evidence demands a more restrictive RFC").  Of note, the ALJ relied on the opinions from the two state agency medical consultants when formulating the RFC, both of whom specifically considered plaintiff's GERD and thyroid nodules, including associated symptoms of abdominal pain, tenderness, and bloating.  AT 55-57, 66-68.  Because plaintiff has failed to carry her burden of demonstrating that those conditions resulted in limitations not addressed in the RFC finding, I find no error in the ALJ's assessment.

2. ALJ's Step Four Finding

Plaintiff also argues that the ALJ's finding that she can perform her

past relevant work as a paralegal is not supported by substantial evidence. Dkt. No. 12, at 12-14.  Specifically, she contends that the ALJ erred in failing to question the vocational expert regarding whether an individual with the limitations included in the RFC would be able to perform that job.

A vocational expert's testimony is not the only evidence that can constitute substantial evidence to support a finding at step four.  The ALJ specifically found that plaintiff could perform her work as a paralegal as that job is generally performed in the national economy, and therefore plaintiff's arguments that her testimony showed she could not perform that job as she actually performed it in the past do not undermine the ALJ's finding.  *See Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 49 (2d Cir. 2018) ("The claimant has the burden to show an inability to return to her previous specific job *and an inability to perform her past relevant work generally*.") (emphasis added); *Nobile v. Comm'r of Soc. Sec.*, 16-CV-0871, 2017 WL 3054846, at *5 (N.D.N.Y. July 19, 2017) (Stewart, M.J.) ("A supported finding that a claimant can perform past relevant work as generally performed is sufficient to allow for an unfavorable determination at step four even if the claimant is not able to perform that same work as she actually performed it in the past.").

In rendering his finding, the ALJ specifically indicated that he relied

on the DOT as the basis for his finding.  AT 17.  The companion publication to the DOT, the Selected Characteristics of Occupations ("SCO"), indicates that the job of paralegal consistent with the DOT number provided by the vocational expert never requires the ability to climb, balance, stoop, kneel, crouch or crawl, and never requires exposure to respiratory irritants.  The DOT therefore supports the ALJ's finding that plaintiff can perform her past relevant work as that job is generally performed in the national economy, and testimony from a vocational expert on that issue was not required to provide substantial evidence for that finding.  *See Morais v. Comm'r of Soc. Sec.*, 16-CV-1487, 2018 WL 1441310, at *8 (N.D.N.Y. Mar. 22, 2018) (Carter, M.J.) (finding no error at step four where the ALJ relied on the DOT description of the relevant occupation to find that the plaintiff could perform that job as it was generally performed); *see Sanderson v. Astrue*, 08-CV-1177, 2011 WL 1113856, at *9 (N.D.N.Y. Jan. 19, 2011) (Bianchini, M.J.) (acknowledging that an ALJ can consult the DOT "to define the job as it is usually performed in the national economy").

## IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of

proper legal principles and is supported by substantial evidence.

Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED,

defendant's motion for judgment on the pleadings (Dkt. No. 13) be

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be

DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days

within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    November 15, 2022
        Syracuse, NY
_____
DAVID E. PEEBLES
U.S. Magistrate Judge